**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


**NORTH AMERICA RECYCLING,**
**LLC**, *et al.*,

        **Plaintiffs,**

                                      **Civil Action 2:08-cv-00579**

**vs.**                                **Judge Michael H. Watson**
                                      **Magistrate Judge E.A. Preston Deavers**


**TEXAMET RECYCLING, LLC,** *et al.*,

        **Defendants.**


**REPORT AND RECOMMENDATION**

        Plaintiffs brought this Complaint raising various claims against Defendants including defamation, unfair competition, and tortious interference with business relations.  Based on Defendants failure to answer Defendants' Complaint, Amended Complaint, and Requests for Admission, the Court granted Plaintiffs' motion for partial summary judgment.  The Court referred this matter to the undersigned to conduct an evidentiary hearing and issue a Report and Recommendation regarding Plaintiffs' damages.  On May 28, 2010, the undersigned conducted an evidentiary hearing concerning Plaintiffs' damages.[1]  At the request of the Court, Plaintiffs filed a Brief on the issue of damages, including proposed order language.

**I.  BACKGROUND AND ANALYSIS**

        In its Order granting partial summary judgment, the Court outlined Plaintiffs' tortious conduct:

---

      [1] Defendants did not appear before the Court at the evidentiary hearing.  Consequently, all of the evidence Plaintiffs submitted was uncontested.

On October 31, 2007, Defendants sent an electronic mail to a person identified as "Bob" in which the Plaintiffs were accused of fraud, fraudulent inducement, and wire fraud. Defendants were aware at the time this email was sent that the statements made were false. Defendants had also sent another electronic mail on October 21, 2007, to a person identified as "Felix Lim." In this email Defendants knowingly made false statements about the Plaintiffs misrepresenting material and engaging in fraud. On November 8, 2007, November 19, 2007, March 5, 2008, May 26, 2008, and December 12, 2008, Defendants knowingly made similar false statements.

. . .

Defendants targeted forums for their defamatory statements that would cause maximum harm to Plaintiffs. For example, Defendants posted on a website, RecycleInMe, well known in the plastics recycling industry as a forum for buying and selling recycled plastic materials. Defendants also targeted certain persons or companies that they knew maintained business relationships with the Plaintiffs, such as Felix Lim and ECI International, LLC. Each action of the Defendants was calculated to directly defame the Plaintiffs and interfere with the success of their business.

. . .

The Defendants used the term "scammer" repeatedly and alleged ongoing misrepresentation and fraud [on] behalf of the Plaintiffs. *See* Req. for Admis. at 4–11; Am. Compl. at 3–9. These types of phrases are clearly defamatory and are used to impugn the honesty and character of the plaintiffs so that others will avoid doing business with them. These phrases were published directly to third parties via email and also widely to those in the recycling business on the internet. *See* Req. for Admis. at 4–11; Am. Compl. at 3–9. When these statements were made, the Defendants were aware of their falsity. Req. for Admis. 4–11.[2]

---

[2] The record reveals that Defendants published various defamatory statements, in both emails to potential customers and internet postings, including the following:

[Plaintiffs] committed alleged fraud, alleged fraudulent inducement and alleged wire fraud as they bought from ATR PC/PA and sold to me as clear PC, when their order stated to [others] that the material contained amorphous Nylon, knowing that being amorphous, there was no way in hell to separate PC/PA . . . .

[Plaintiff Susan Dallimore] made the offer to you. If you accept it that's ok with me. You have my permission You may directly work with them. I have a reason not to accept their offer as it is not clear, concise nor impressionable and there are others who have been allegedly wronged and you may feel free to speak with them, about other improprieties. Again it happened today. Misrepresenting material. I will give you more information when I am allowed to. They had no intentions of settling with me. I and others are filing alleged criminal charges against the Dallimores with the Ohio Attorney General's office, the FBI and the

District Attorney in their county of residence. Maybe a Grand Jury [will] find enough probable cause after Joe Kung, Raju, Myself, Matt, Emerson Grinding and others to at least arrest them for alleged fraud, alleged wire fraud, alleged misrepresentation of materials, alleged fraudulent inducement and any other charges they may seek. We will leave it in their hands at this point. . . .

I would advise you even though the Dallimore's are replacing the material, you may want to get it all SGS inspected. I guarantee that this material will be non-conforming and not the same material as represented. I hope you take my advice seriously, as he will blame his "customer" who he will NOT pay for this material and you will end up in worse shape than you are now. . . .

GERRY AND SUSAN DALLIMORE-OWES TEXAMET OVER $78,000.00. BUYS MATERIALS AS PC/PA. SELLS AS PC. SELLS LDPE ROLLS, FILLS GAYLORDS WITH PURGE, THEN TOPS OFF WITH ROLLS. OTHER COMPANIES  LOSSES OVER $200,000.00. CALL FOR NAMES AND OTHERS THAT HAVE BEEN FINANCIALLY INJURED BY THIS COMPANY. . . .

Re: SCAMMERS- North America Recycling LLC aka Kindawood from Marietta, OH - SCAMMERS
This is to notify all members of RecycleInMe to beware of this guy, Gerry and Sue Dallimore. They have scammed over 7 companies out of hundreds of thousands of dollars. Do NOT ADVANCE MONEY. DO NOT BUY MATERIAL UNLESS YOU CAN BE THERE TO SEE IT LOADED. He has misrepresented materials, such as: Buying PC/PA and the selling it as PC only, thus getting a 90,000.00 rejection. To back up what I say; I can forward you documentation of this and other scams this guy has done. Please do no do business with this character. Go to our site to see the Scammers at www.scrapmetalsandplastics.com. Gerry is also nothing more than an Internet Trader and does not have his own money to purchase material . . . .

KINDAWOOD USA LLC -MISREPRESENTS MATERIALS, SHIPS LIGHT, BUYS MATERIAL AS PC/PA, SELLS AS PC. SELLS LDPE ROLLS, FILLS GAYLORDS WITH PURGE, THEN TOPS OFF WITH ROLLS. OTHER COMPANIES LOSSES OVER $200,000.00 CALL FOR NAMES AND OTHER THAT HAVE BEEN FINANCIALLY INJURED BY THIS COMPANY WARNING!! GERRY AND SUSAN DALLIMORE ARE NOW OPERATING UNDER THE NAME OF WWW.NORTHAMERICANRECYCLING.COM . . . .

(Req. for Admis. # 12–34.)

(Doc. 9 at 2–3, 5.)  At the evidentiary hearing, Plaintiffs testified under oath that Defendants have continued to harass them since they brought this current action.

At the evidentiary hearing, Plaintiffs also presented uncontested evidence regarding their damages.  Plaintiffs indicated, that it was difficult, if not impossible, for them to calculate their total losses as a result of Defendants' conduct, and that their main concern was simply to stop Defendants' defamatory behavior.  Plaintiffs did submit, however, evidence regarding attorneys' fees, lost profits, and damage to their business' reputation.  The evidence indicated damages for lost profits in excess of $100,000, and attorneys' fees in the amount of $4,500.

## II.  LAW AND ANALYSIS

The undersigned recognizes that due to the nature of Defendants' internet publications, ascertaining the full extent of the damages from Defendants' conduct is challenging. Nevertheless, the Court of Appeals for the Sixth Circuit has acknowledged that district courts have discretion to exercise "'broad and flexible equitable powers to fashion a remedy that will fully correct past wrongs' . . . ."  *Woodruff v. Ohman*, 29 Fed. Appx. 337, 346 (6th Cir. 2002) (quoting *Smith v. Town of Clarkton*, 682 F.2d 1055, 1068 (4th Cir.1982));).

In constructing a remedy in this defamation case, however, the Court is aware of First Amendment concerns, particularly related to matters touching upon prior restraint of speech.  As the Supreme Court has stated, "[t]he term prior restraint is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'"  *Alexander v. U.S.*, 509 U.S. 544, 550 (1993) (quoting M. Nimmer, Nimmer on Freedom of Speech § 4.03, p. 4-14 (1984) (emphasis added)). "[P]ermanent injunctions— *i.e.*, court orders that actually forbid speech activities— are classic examples of prior restraints."  *Id.*

4

Because of the First Amendment implications of prior restraints, "[t]he usual rule is that 'equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages.'"  *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1206 (6th Cir. 1990) (Guy, J., majority opinion, controlling except as to injunctive relief for defamatory speech) (quoting *Community for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (D.C. Cir. 1987); *see also Capital Cities Media, Inc. v. Toole*, 463 U.S. 1303, 1305 (1983) ("It hardly requires repetition that [a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity . . . .") (internal quotation omitted).  Despite this general prohibition, a modern rule appears to be emerging concerning the enjoinment of defamatory speech.  *Lassiter v. Lassiter*, 456 F. Supp. 2d 876, 882–85 (E.D. Ky. 2006) (discussing development of legal authority constitutionally condoning injunctions in cases of defamatory speech).

The Sixth Circuit has ordered a limited injunction to prohibit a defendant "from continuing and reiterating" statements the Court found to be "libelous and defamatory." *Lothschuetz*, 898 F.2d at 1206, 1208–09 (Wellford, J., concurring in part, dissenting in part, but controlling on the issue of injunctive relief).   According to the *Lothschuetz* Court injunctive relief was necessary to protect the plaintiff's "personal reputation and business relations" from defendants making "frequent and continuing defamatory statements."  *Id.*[3]

In 2005, the Supreme Court nearly considered the issue of whether injunctive relief was appropriate in the area of defamation.  *See Tory v. Cochran*, 544 U.S. 734, 737 (2005) (noting that petitioner raised the issue of whether "the First Amendment forbids the issuance of a

---

[3] To the extent this case arises under the Court's diversity jurisdiction, the Court notes that the Ohio Supreme Court has authorized issuance of an injunction to prohibit continuing reiteration of defamatory speech.  *O'Brien v. Univ. Cmty. Tenants Union, Inc.*, 42 Ohio St. 2d 242, 245 (Ohio 1975).

permanent injunction in a defamation case, at least when the plaintiff is a public figure").  The Court, however, ultimately decided the case on other grounds.  *Id.* at 738–39; *see also e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 605–06 (7th Cir. 2007) (acknowledging, but not deciding, the issue of whether narrowly tailored injunctive relief is appropriate in defamation actions).  The undersigned also finds noteworthy that, in a recent decision, the Supreme Court of California found that a narrowly tailored injunction would not be unconstitutional within the defamation setting.  *Balboa Island Village Inn, Inc. v. Lemen*, 40 Cal. 4th 1141, 1162 (Cal. 2007) (holding, after performing a comprehensive review of prohibitions against prior restraints, that "a properly limited injunction prohibiting defendant from repeating statements about plaintiff that were determined at trial to be defamatory would not violate defendant's right to free speech.")

In this case, much like the situation in *Lothschuetz*, Defendants have repeatedly and persistently issued defamatory statements against Plaintiffs.  To make matters worse, many of these defamatory statements have been posted on the internet, making the ultimate calculation of damages difficult, if not impossible.  As noted above, at the evidentiary hearing, Plaintiffs submitted evidence that Defendants' comments and postings have damaged their business reputations and have cost them profits well in excess of $100,000.  Despite this significant loss, Plaintiffs emphasize that their primary goal is simply to stop Defendants' defamatory behavior.

Under these unique circumstances, the undersigned finds that a remedy resembling limited injunctive relief is necessary.  Nevertheless, the undersigned emphasizes that pursuant to this Report and Recommendation, even if Defendants choose not to follow the Court's instructions for remittance (i.e. cancelling) of damages described below, Defendants will only be liable for the amount of damages their defamatory acts have already caused and not damages for any future activity.

## III. CONCLUSION

Considering all the evidence, it is **RECOMMENDED** that the Court find that Plaintiffs are entitled to **DAMAGES IN THE AMOUNT OF $154,500** as a result of Defendants tortious activity. The undersigned further **RECOMMENDS** that the Court **REMIT (CANCEL) THE DAMAGES AWARD, WITH THE EXCEPTION OF $4,500 FOR ATTORNEYS' FEES, IF DEFENDANTS MEET THE FOLLOWING CONDITIONS:**

1.  Defendants shall cease and desist in perpetuity from making or publishing statements regarding the business practices, dealings, or contracts of any Plaintiff, that are the same, or significantly similar, in nature to the statements this Court has found to be defamatory in this case.

2.  To the fullest extent possible, Defendants shall forthwith remove and/or cause to be removed from all websites and publications, all statements Defendants have made that this Court has found to be defamatory, and any statements similar in nature published during or before the current proceedings, regarding the business practices, dealings, or contracts of any Plaintiff.

Upon failure to meet any of these conditions, it is **RECOMMENDED** that Plaintiffs **RECEIVE THE FULL DAMAGE AWARD OF $154,500**. It is also **RECOMMENDED** that the Court maintain jurisdiction to monitor Defendants' compliance with the Court's final order for a period of one (1) year.

In addition to this Report and Recommendation, the Clerk is **DIRECTED** to mail Defendants a copy of the Courts' March 24, 2010 Order (Doc. 9) and Plaintiffs' First Request for Admissions (Doc. 8–1), attached as Exhibit 1 to Plaintiffs' Motion for Summary Judgment.

## III. NOTICE

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

November 17, 2010                          /s/ *Elizabeth A. Preston Deavers*
                                           Elizabeth A. Preston Deavers
                                           United States Magistrate Judge